IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE AMY ST. EVE

MAGISTRATE JUDGE

William Helzing,

    Plaintiff,

v.

Loyola University of Chicago,

    Defendant.

**02C 9408**

**DOCKETED**
DEC 2 7 2002

<u>**PLAINTIFF DEMANDS TRIAL BY JURY**</u>

## COMPLAINT

### Jurisdiction and Venue

1. Federal and Supplemental subject matter jurisdiction of this case exists by reason of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. §2000 *et. seq.*, and 28 U.S.C. §1367(a), and 42 U.S.C. Section 1988.

2. At all relevant times, plaintiff William Helzing was and continues to be a resident of Cook County, Illinois.

3. Defendant Loyola University of Chicago ("Loyola") at all relevant times was and continues to be a corporation organized under the laws of Illinois. Its corporate headquarters at all relevant times was and continues to be in Cook County, Illinois.

### Background Facts

4. Plaintiff William Helzing is a male.

5. Plaintiff commenced employment as an employee of defendant Loyola University of Chicago in approximately 1988. Plaintiff had extensive experience in systems development and applications in the information technology field prior to becoming an employee of defendant.

6. Plaintiff's job upon commencing employment with defendant was Senior Systems Analyst in defendant's Student Information Services ("SIS") group.

7. In approximately 1996, defendant promoted plaintiff to Director of SIS, a management position at Loyola.

8. On or about February 2001, defendant hired Ellen Watson ("Watson"), a female, and placed her in the job position of Vice President of Loyola's information technology department.

9. Upon Watson's employment with defendant, plaintiff was required to report directly to

Watson.

10. Prior to Watson becoming the Vice President of Loyola's technology department, defendant gave plaintiff written performance reviews, all of which reflected that plaintiff had met or surpassed the defendant's job expectations for plaintiff.

11. Shortly after Watson became Vice President of Loyola's technology department, Watson announced that defendant's University Business Systems ("UBS") group would be merged with defendant's SIS group and the merged group would be called University Business Application Services ("UBAS"). The merger was to be effective on July 1, 2001.

12. When Watson was hired by defendant, Donna Dorl-Adams ("Dorl-Adams"), a female, was working in the UBS group as "Interim Director" of UBS. Dorl-Adams had assumed the "Interim Director" position in approximately September 2000. Prior to September 2000, Dorl-Adams had been employed by defendant as Director of Client Services, a job in which she managed software on desktops rather than managing a software development staff.

13. At the time and during the entire time that Dorl-Adams assumed the job of "Interim Director" in UBS, there was no Director position approved for UBS; in fact, the job position of Director of UBS, was previously held by a male in 2000 who was terminated in a reduction in force when the UBS Director position was eliminated. No new position for Director had been created or approved in accordance with defendant's policies for creating and approving job positions. Additionally, no job opening for the Director position into which Dorl-Adams was placed had been posted or announced prior to Dorl-Adams being placed in that position, contrary to Loyola's policies for the placement of employees into job positions.

14. In approximately April 2001, Watson informed plaintiff that he would have to "apply" and "interview" for the UBAS Director position, and that plaintiff's Director SIS position was being eliminated. Dorl-Adams was to be the solitary other candidate for the UBAS Director position. The UBAS Director position would become effective July 1, 2001.

15. Plaintiff complained to Watson of sex discrimination: among other things, he stated that Dorl-Adams was not qualified for the Director position; that he was in fact the only qualified candidate who had the necessary experience to serve as UBAS Director; and that defendant had failed to follow its own policies when in 2000 it eliminated the male Director of UBS's job and then placed a female (Dorl-Adams) who was unqualified and had no prior systems development

experience, in the Interim Director UBS position, a position that did not exist and which never had been approved or posted as an open position, all in contravention of defendant's policies. Plaintiff also stated that Dorl-Adams had at best only five or six months of systems experience (via her improper placement into the Interim Director position) and that plaintiff, on the other hand, had over two decades of systems experience including five or more years experience as Director of SIS at Loyola. Plaintiff further told Watson that it was improper and unfair to require plaintiff to compete for the Director UBAS job against an unqualified female.

16. After plaintiff complained of sex discrimination, Watson for the first time stated to plaintiff that she had "heard" a criticism concerning plaintiff's interpersonal relationship skills at the defendant university. Prior to plaintiff complaining of sex discrimination to Watson, Watson had never orally or in writing criticized plaintiff's work performance or his "interpersonal relationship skills."

17. Plaintiff asked Watson for more details. Watson refused to provide more details. Plaintiff in writing gave Watson a list of more than twenty client users at defendant Loyola who had experience working first hand with plaintiff, and he asked Watson to speak to those persons about his interpersonal relationship skills and his past job performance as Director before she made the decision of selecting the UBAS Director.

18. Watson evaded plaintiff's request, stating that she would eventually meet all of the people on plaintiff's list as she "got the chance."

19. Watson represented to plaintiff that a panel of three persons would be interviewing plaintiff and Dorl-Adams for the Director UBAS position. The panel was to consist of Watson (female) and another female and a male.

20. In actual fact, only Watson and another female interviewed plaintiff and Dorl-Adams for the Director UBAS position.

21. Prior to the interview, plaintiff was required by Watson to submit a vision statement, and plaintiff complied, including a detailed discussion of his vision for the future of UBAS.

22. During the interview of plaintiff, which lasted only a few minutes, Watson and the other female interviewer primarily asked plaintiff questions about past events and thus plaintiff was required to primarily discuss the past rather than the items set forth in his vision statement pertaining to the future.

23. Thereafter, Watson informed plaintiff on approximately April 21, 2001 that Dorl-Adams was selected for the Director UBAS position over plaintiff. When plaintiff asked why, Watson initially would not answer the question. Later, after plaintiff filed his EEOC charge, Watson claimed that Dorl-Adams had more of a vision of the future than plaintiff while plaintiff had primarily discussed the past during his interview.

24. When he was informed of the selection of Dorl-Adams over plaintiff for the Director UBAS job, plaintiff respectfully objected to Watson, stating that Watson's selection of a female who was less qualified than a male for the UBAS Director position was improper and unfair.

25. Watson did not either in April 2001 or in May 2001 convey up the chain of command or to the appropriate persons plaintiff's complaints of sex discrimination or cause any investigation of plaintiff's complaints of sex discrimination to be conducted.

26. Watson informed plaintiff that he must now report directly to Dorl-Adams who in turn reported to Watson. Watson and Dorl-Adams together engaged in a campaign of harassment and further sex discrimination and retaliation against plaintiff.

27. Watson and Dorl-Adams, before the July 1, 2001 date when Dorl-Adams' promotion was to become effective, required that plaintiff submit details for an objectives list to Dorl-Adams for Dorl-Adams' and Watson's approval.

28. No employee who had not complained of sex discrimination was required to prepare a detailed objectives list for Dorl-Adams' and Watson's approval at this time.

29. Plaintiff was also required to work off of a list of objectives prepared by Dorl-Adams and Watson, some of which included items which they knew would be impossible for plaintiff to perform. For example, one objective included requiring plaintiff to submit time deadlines for the successful installation of unspecified software that defendant had not even fully identified for purchase yet and for which the time lines for the installation would be dependent upon the time lines yet to be developed and given to defendant by a third party vendor, whose own ability to develop and submit the details and time lines to defendant was hindered by defendant's refusal to yet agree upon or complete execution of a contract for the purchase of the unspecified software.

30. Watson and Dorl-Adams further withheld from plaintiff key information essential to plaintiff meeting the alleged objectives, including among other things the contract for and specifications for a certain project and excluded plaintiff from meetings with the vendor concerning the project.

31. Plaintiff was also stripped of most of his major prior managerial responsibilities, and at the same time defendant would not tell plaintiff what his new job title was, despite plaintiff's repeated requests.

32. In approximately August 2001, defendant by its agent and employee Dorl-Adams falsely stated via an E-mail communication to plaintiff that plaintiff had been informed by Watson in May 2001 that he had a six month window of time in which to show significant improvement in his job performance at Loyola.

33. Nothing existed in plaintiff's personnel file in May 2001 or at any time prior to August 2001 to document that Watson had allegedly in May 2001 ever given plaintiff any such "six month window," despite defendant's policies requiring that written documentation of such action against an employee be made and communicated to the employee and placed in the employee's personnel file.

34. Watson had never in May 2001 or at any time prior to August 2001 conveyed to plaintiff that he had a six month window to significantly improve his job performance at Loyola. The first time that plaintiff heard such a thing was in the false August 2001 E-mail from Dorl-Adams wherein she stated that Watson had informed plaintiff in May 2001 that he had a six month window to significantly improve his job performance.

35. The day after plaintiff received the false Email, plaintiff on August 7, 2001 complained of the sex discrimination and the retaliation that was ongoing against plaintiff in a detailed, written, complaint letter to defendant's Vice-President of Human Resources.

36. In response, Mimi Winter, a management female in the defendant's HR department, informed plaintiff that defendant would conduct an investigation of plaintiff's complaint.

37. On August 21, 2001, before even interviewing plaintiff, Winter prepared a memo addressed to plaintiff stating that she had performed an investigation and that she had concluded that there had been no discrimination against plaintiff.

38. Plaintiff requested, among other things, that Winter interview the persons listed on the same list that he had previously given to Watson (the same persons whom he had previously requested that Watson speak to about plaintiff's job performance and interpersonal relationships skills with clients before making her selection of the UBAS Director.)

39. Winter told plaintiff to give her a shorter list of persons, and plaintiff complied. Thereafter,

Winter did not in her investigation speak to all of the persons on the short list, either.

40. After plaintiff's August 7, 2001 written complaint of sex discrimination and retaliation to defendant's HR representative, defendant's campaign of harassment and retaliation against plaintiff worsened.

41. Plaintiff repeatedly complained to defendant's Human Resources management about the harassment.

42. On or about September 17, 2001, plaintiff filed a charge in the Equal Employment Opportunity Commission ("EEOC") against defendant based upon sex discrimination and retaliation.

43. The acts of retaliation by defendant since the plaintiff's complaints of sex discrimination and retaliation include the following:

    a. selecting an unqualified female over plaintiff for the position of UBAS Director after staging a biased interview designed to pretextually justify defendant's selection of the female over plaintiff;

    b. conducting a bogus, inadequate "investigation" into plaintiff's complaints of sex discrimination and retaliation;

    c. designating another unqualified female rather than plaintiff to act as UBAS Director in Dorl-Adams' absence;

    d. denying plaintiff training given to others who had not complained of discrimination or retaliation;

    e. holding plaintiff to closer scrutiny and to different standards than other employees who had not complained of discrimination or retaliation;

    f. overloading plaintiff with work in an effort to impede his ability to do his job;

    g. harassing plaintiff in an effort to make his work environment hostile and intolerable;

    h. failing to comply with defendant's policies for plaintiff's written performance reviews and giving plaintiff a bogus, critical written performance review when in his prior written reviews defendant had always rated plaintiff as "consistently surpasses expectations;"

    i. making communications to others about plaintiff which placed plaintiff in a false light and which impugned plaintiff's professional reputation;

    j. refusing to give plaintiff specifics about alleged performance "deficiencies" while at

the same time pretextually claiming to give plaintiff an "opportunity to improve" the vague "deficiencies;"

k. "papering" plaintiff's personnel file with knowingly false criticisms, and then continuing to rely upon those falsehoods as a pretext for plaintiff's termination even after plaintiff pointed out to defendant's upper management in Human Resources with extensive documentary proof that the statements were false.

44. On or about February 8, 2002, defendant informed plaintiff that his employment with defendant was being terminated, stating that the termination was for "inability to meet the established performance expectations of the position."

45. After terminating plaintiff, defendant further humiliated, embarrassed, and impugned his professional reputation by stating in a written E-mail communication to the same employees who had previously reported to plaintiff when plaintiff was Director that plaintiff would no longer be working for defendant after what was a "long and very difficult process."

46. Dorl-Adams admitted to plaintiff when he complained of defendant's treatment of him that Watson had him "under a microscope."

47. Defendant, by and through its authorized managerial agents and managerial employees and officers, knew that defendant was violating the law in its treatment of the plaintiff.

48. As a proximate result of the defendant's discrimination and retaliation against plaintiff, plaintiff suffered substantial emotional distress, humiliation, and physical illness for which he required medical treatment. Plaintiff also suffered a substantial financial loss in lost wages, lost benefits, decreased pension, and lost future earning capacity.

49. Plaintiff filed a second EEOC charge on May 1, 2002 for the additional discrimination and retaliation. The EEOC issued a Notice of Right to Sue Letter on each of the plaintiff's two EEOC charges on September 25, 2002 which plaintiff through his attorney received by mail a few days thereafter. A true and correct copy of the two Right to Sue Letters is attached hereto.

51. This Complaint is being filed within 90 days after plaintiff's receipt of the Notice of Right to Sue Letters.

## COUNT I - TITLE VII - Sex Discrimination

52-99. Plaintiff incorporates by reference herein plaintiff's allegations in paragraphs 4 through 51 as and for his allegations in paragraphs 52 through 99 of Count I.

100. Defendant's above actions constitute a violation of Title VII, 42 USC Sec. 2000 *et. seq.* which prohibits sex discrimination in employment.

101. As a proximate result of defendant's sex discrimination, plaintiff suffered emotional distress, humiliation, and physical injuries for which he required medical treatment. Plaintiff also suffered a substantial financial loss in lost wages, lost benefits, decreased pension, and lost future earning capacity.

WHEREFORE, plaintiff prays that judgment be entered against defendant and in favor of plaintiff on Count I for compensatory damages, lost wages, lost earning capacity and the value of lost benefits and lost pension, plus punitive damages, prejudgment interest, and equitable and injunctive relief, including front pay in lieu of reinstatement, attorneys' fees, and costs, pursuant to Title VII. Plaintiff requests such further additional damages and equitable relief as is permitted by law.

### COUNT II - TITLE VII - Retaliation

102-149. Plaintiff incorporates by reference herein his allegations in paragraphs 52 through 99 in Count I as and for his allegations in paragraphs 102 through 149 of Count II.

150. Defendant's above actions constitute a violation of Title VII, 42 USC Sec. 2000 *et. seq.*, which prohibits retaliation against an employee who complains of sex discrimination in the workplace.

151. As a proximate result of defendant's retaliation against plaintiff, plaintiff suffered emotional distress, humiliation, and physical injuries for which he required medical treatment. Plaintiff also suffered a substantial financial loss in lost wages, lost benefits, decreased pension, and lost future earning capacity.

WHEREFORE, plaintiff prays that judgment be entered against defendant and in favor of plaintiff on Count II for compensatory damages, lost wages, lost earning capacity and the value of lost benefits and lost pension, plus punitive damages, prejudgment interest, and equitable and injunctive relief, including front pay in lieu of reinstatement, attorneys' fees, and costs, pursuant to Title VII. Plaintiff requests such further additional damages and equitable relief as is permitted by law.

### COUNT III - Negligence Under TITLE VII

152-199. Plaintiff incorporates by reference herein his allegations in paragraphs 52 through 99 in

Count I as and for his allegations in paragraphs 152 through 199 of Count III.

200. It was at all relevant times defendant's duty under Title VII to exercise due care to establish, implement and enforce adequate sex discrimination and anti-retaliation policies and to exercise due care to take adequate steps to investigate complaints of sex discrimination and retaliation and to take adequate steps to correct, remedy or ameliorate sex discrimination and retaliation in the workplace, especially when defendant knew or should have known of the increased risk of harm to employees including plaintiff if defendant failed to exercise due care.

201. Defendant through its authorized agents and managerial employees negligently failed to take adequate steps to investigate, remedy and/or correct sex discrimination and retaliation of plaintiff in the workplace despite plaintiff's complaints, and negligently failed to enforce its written sex discrimination and anti-retaliation policies.

202. As a proximate result of defendant's negligence above, Dorl-Adams, Watson and defendant's other management personnel continued to commit acts of sex discrimination and retaliation against plaintiff, further injuring the plaintiff and creating an extremely hostile work environment for plaintiff.

WHEREFORE, plaintiff prays that judgment be entered against defendant and in favor of plaintiff on Count III for compensatory damages, lost wages, lost earning capacity and the value of lost benefits and lost pension, plus punitive damages, prejudgment interest, and equitable and injunctive relief, including front pay in lieu of reinstatement, attorneys' fees, and costs, pursuant to Title VII. Plaintiff requests such further additional damages and equitable relief as is permitted by law.

**COUNT IV - Negligent Hiring, Supervision and Retention Under Title VII**

203-250. Plaintiff incorporates by reference herein his allegations in paragraphs 52 through 99 in Count I as and for his allegations in paragraphs 203 through 250 of Count IV.

251. It was at all times defendant's duty under Title VII to exercise due care when hiring, supervising and retaining in its employ upper management personnel who are in a position capable of influencing and materially affecting the employees' terms and conditions of their employment and their work environment.

252. Defendant breached that duty and, on information and belief, negligently hired Ellen Watson and placed her in such an upper management position without conducting an adequate inquiry into

Watson's background, work history and knowledge and training in the areas of Title VII's sex discrimination and Title VII's anti-retaliation requirements.

253. Defendant further breached its duty by failing to exercise due care in supervising and/or retaining Watson and Dorl-Adams in its employ especially after defendant's upper management knew or should have known that plaintiff was repeatedly complaining that they had discriminated against him based on sex and that they were retaliating against him for complaining of discrimination.

254. As a proximate result of defendant's negligence as outlined above, plaintiff suffered further sex discrimination and further retaliation and was made to suffer an extremely hostile work environment, all in violation of Title VII, and plaintiff suffered emotional distress and physical injuries as a result thereof.

WHEREFORE, plaintiff prays that judgment be entered against defendant and in favor of plaintiff on Count IV for compensatory damages, lost wages, lost earning capacity and the value of lost benefits and lost pension, plus punitive damages, prejudgment interest, and equitable and injunctive relief, including front pay in lieu of reinstatement, attorneys' fees, and costs, pursuant to Title VII. Plaintiff requests such further additional damages and equitable relief as is permitted by law.

Respectfully submitted,

*(signature)*

Sharon Finegan Patterson

Sharon Finegan Patterson
39 South LaSalle Street
Suite 1014
Chicago, IL 60603
(312) 855-1076

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
# NOTICE OF RIGHT TO SUE
(Issued on request)

| To: | William R. Helzing<br>c/o Sharon Finegan Patterson, Esq.<br>39 South La Salle St., Suite 1014<br>Chicago, IL 60603<br><br>Certified No.: 7099 3400 0006 7299 4188<br><br>☐ On behalf of a person aggrieved whose identity is confidential (29 C.F.R. 1601.7(a)) | From: | Equal Employment Opportunity Commission<br>500 West Madison Street<br>Suite 2800<br>Chicago, Illinois 60661 |
|---|---|---|---|

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 210A15159 | LaMarr Thomas, Investigator | (312) 353-0905 |

(See the additional information attached to this form.)

**TO THE PERSON AGGRIEVED:** This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in you charge, YOU MUST DO SO WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

__X__ More than 180 days have expired since the filing of this charge.

_____ Less than 180 days have expired since the filing of this charge, but I have determined that the commission will be unable to complete its process within 180 days from the filing of the charge.

__X__ With the issuance of this NOTICE OF RIGHT TO SUE, the Commission is terminating its process with respect to this charge.

_____ It has been determined that the Commission will continue to investigate your charge.

_____ **ADEA:** While Title VII and the ADA require EEOC to issue this notice of right to sue before you can bring a lawsuit you may sue under the Age Discrimination in Employment Act (ADEA) any time 60 days after your charge was filed until **90 days after you received notice that EEOC has completed action on your charge.**

_____ **Because EEOC is closing your case,** your lawsuit under the ADEA must be brought within 90 days of your receipt of this notice. Otherwise, your right to sue is lost.

_____ **EEOC is continuing its investigation.** You will be notified when we have completed action and, if our notice will include notice of right to sue under the ADEA.

_____ **EPA:** While Title VII and the ADA require EEOC to issue this Notice of Right to Sue before you can bring a lawsuit you already have the right to sue under the Equal Pay Act (EPA). (You are not required to complain to any enforcement agency before bringing and EPA suit in court). EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On Behalf of the Commission

9-25-02
Date

_John P. Rowe_
John P. Rowe, District Director

Enclosures
   Information Sheet
   Copy of Charge

cc: Respondent(s)    Loyola University

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## NOTICE OF RIGHT TO SUE
(Issued on request)

| To: | William R. Helzing<br>c/o Sharon Finegan Patterson, Esq.<br>39 South La Salle St., Suite 1014<br>Chicago, IL 60603 | From: | Equal Employment Opportunity Commission<br>500 West Madison Street<br>Suite 2800<br>Chicago, Illinois 60661 |
|---|---|---|---|

Certified No.: 7099 3400 0006 7299 4188

☐ On behalf of a person aggrieved whose identity is confidential (29 C.F.R. 1601.7(a))

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 210A202876 | LaMarr Thomas, Investigator | (312) 353-0905 |

(See the additional information attached to this form.)

**TO THE PERSON AGGRIEVED:** This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in you charge, YOU MUST DO SO WITHIN NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

__X__ More than 180 days have expired since the filing of this charge.

_____ Less than 180 days have expired since the filing of this charge, but I have determined that the commission will be unable to complete its process within 180 days from the filing of the charge.

__X__ With the issuance of this NOTICE OF RIGHT TO SUE, the Commission is terminating its process with respect to this charge.

_____ It has been determined that the Commission will continue to investigate your charge.

_____ **ADEA:** While Title VII and the ADA require EEOC to issue this notice of right to sue before you can bring a lawsuit you may sue under the Age Discrimination in Employment Act (ADEA) any time 60 days after your charge was filed until **90 days after you received notice that EEOC has completed action on your charge.**

_____ **Because EEOC is closing your case,** your lawsuit under the ADEA must be brought within 90 days of your receipt of this notice. Otherwise, your right to sue is lost.

_____ **EEOC is continuing its investigation.** You will be notified when we have completed action and, if our notice will include notice of right to sue under the ADEA.

_____ **EPA:** While Title VII and the ADA require EEOC to issue this Notice of Right to Sue before you can bring a lawsuit you already have the right to sue under the Equal Pay Act (EPA). (You are not required to complain to any enforcement agency before bringing and EPA suit in court). EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On Behalf of the Commission

9-25-02
Date

_John P. Rowe_
John P. Rowe, District Director

Enclosures
    Information Sheet
    Copy of Charge

cc: Respondent(s)    Loyola University

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
William Helzing,

**JUDGE AMY ST. EVE**

## DEFENDANTS
Loyola University of Chicago.

**02C 9408**

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

**MAGISTRATE JUDGE NOLAN**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Sharon Finegan Patterson
39 S. LaSalle Street, Suite 1014
Chicago, IL 60603    312-855-1076

ATTORNEYS (IF KNOWN)

**DOCKETED**
DEC 2 7 2002

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 USC §2000 et seq. (TITLE VII - sex discrimination and retaliation)

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

DEMAND $ 1,000,000.00

CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. This case
☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE: 12/26/02

SIGNATURE OF ATTORNEY OF RECORD: Sharon Finegan Patterson

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

William Helzing, Plaintiff,
v.
Loyola University of Chicago, Defendant.

JUDGE AMY ST. EVE

MAGISTRATE JUDGE NOLAN

Case Number: **02C 9408**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:
Plaintiff, William Helzing

**DOCKETED**
DEC 27 2002

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: Sharon Finegan Patterson | NAME |
| FIRM | FIRM |
| STREET ADDRESS: 39 South LaSalle Street, Suite 1014 | STREET ADDRESS |
| CITY/STATE/ZIP: Chicago, Illinois 60603 | CITY/STATE/ZIP |
| TELEPHONE NUMBER: 312-855-1076   312-782-1332 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? 03127918   YES ☒ NO ☐ | MEMBER OF TRIAL BAR?   YES ☐ NO ☐ |
| TRIAL ATTORNEY?   YES ☒ NO ☐ | TRIAL ATTORNEY?   YES ☐ NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?   YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐ NO ☐ | MEMBER OF TRIAL BAR?   YES ☐ NO ☐ |
| TRIAL ATTORNEY?   YES ☐ NO ☐ | TRIAL ATTORNEY?   YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL?   YES ☐ NO ☐ |

